# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

JOHN WESLEY LARKIN, JR., )
)
    Petitioner, )
)
vs. )  Case No. 12-CV-081-GKF-TLW
)
TERRY MARTIN, )
)
    Respondent. )

## OPINION AND ORDER

Before the Court is the petition for writ of habeas corpus (Dkt. # 1) filed by Petitioner, a state inmate appearing pro se. Respondent filed a response (Dkt. # 5), and provided the state court records necessary for adjudication of Petitioner's claims (Dkt. # 5, 6). Petitioner filed a reply (Dkt. # 7). For the reasons discussed below, the petition is denied.

### *BACKGROUND*

In the overnight hours of June 17-18, 2008, Petitioner John Wesley Larkin, Jr., shot Jessie Lynn Hurt. Hurt was Valerie Towry's boyfriend. Towry was Petitioner's wife. At the time of the shooting, Towry and Petitioner had been separated since April 6, 2008, and had begun divorce proceedings. Hurt died as a result of a gunshot wound to the chest and abdomen.

Based on the events surrounding the shooting, Petitioner was charged, by Amended Information filed in Tulsa County District Court, Case No. CF-2008-2948, with First Degree Murder (Count 1), and Possession of a Firearm, After Former Conviction of a Felony (Count 2). A second page identified two (2) prior felony convictions. Petitioner received a jury trial. At trial, Towry testified Petitioner had threatened to kill her and Hurt, and that, just before the shooting, she drove with Hurt in a van to show Hurt where Petitioner lived. She claimed they did not expect Petitioner

to be home, and that Hurt was not armed. But Petitioner was home, and a confrontation ensued. Towry testified that Hurt got out of the van to try to calm Petitioner and that Hurt was shot as he stood in the street behind the van. Petitioner testified in his own defense. He admitted firing a gun that night, but claimed Hurt was armed and fired the first shot. Petitioner also testified that, earlier that evening, Hurt had threatened to blow Petitioner's head off and that Petitioner fired the gun in self-defense because he "was scared for my life." He claimed he did not intend to shoot Hurt.

At the conclusion of the first stage of trial, the jury found Petitioner guilty of the lesser included offense of First Degree Manslaughter (Count 1). At the conclusion of the second stage, the jury found Petitioner guilty of Possession of a Firearm, After Former Conviction of a Felony (Count 2). On August 31, 2009, the trial judge sentenced Petitioner, in accordance with the jury's recommendation, to seventeen and one half (17 ½) years imprisonment on Count 1 and four (4) years imprisonment on Count 2, with the sentences to be served consecutively. Assistant Public Defenders Jill Webb and Greg Graves represented Petitioner at trial.

Represented by Assistant Public Defender Stuart W. Southerland, Petitioner perfected a direct appeal to the Oklahoma Court of Criminal Appeals (OCCA). Petitioner raised seven (7) propositions of error, as follows:

| | |
|---|---|
| Proposition I: | It was error to excuse a prospective juror for cause on the basis of an outstanding warrant for non-payment of a fine. |
| Proposition II: | It was error to refuse to strike the jury panel, or, in the alternative, excuse two prospective jurors for cause. |
| Proposition III: | The admission of numerous irrelevant and prejudicial photographs violated the Oklahoma Evidence Code and denied Appellant the right to a fair trial under the Fourteenth Amendment to the United States Constitution. |

| | |
|---|---|
| Proposition IV: | It was reversible error to give a flight instruction in this case. The instruction undermined Appellant's right to a fair trial under the Fourteenth Amendment to the United States Constitution. |
| Proposition V: | The jury was not instructed on the self-defense provisions of 21 O.S.Supp.2006, § 1289.24. The jury was not adequately instructed on Appellant's theory of defense, requiring reversal of his conviction in Count One. |
| Proposition VI: | The prosecutor's response to defense counsel's discovery request with regard to the jail telephone recordings violated Appellant's right to due process and a fair trial. |
| Proposition VII: | The combined error during Appellant's trial served to deny him the right to a fair trial guaranteed by the Fourteenth Amendment to the United States Constitution. |

(Dkt. # 5-1). In an unpublished Summary Opinion, filed September 28, 2010, in Case No. F-2009-792, the OCCA denied relief and affirmed the Judgment and Sentence of the district court. (Dkt. # 5-3).

On September 12, 2011, Petitioner filed an application for post-conviction relief. (Dkt. # 5-4). The trial judge denied the requested relief by order filed October 21, 2011. Id. Petitioner appealed. (Dkt. # 5-5). In resolving Petitioner's post-conviction appeal, the OCCA found that Petitioner raised five (5) claims of ineffective assistance of appellate counsel based on appellate counsel's failure to: (1) challenge the flight instruction as allowing the jury to indulge in an improper presumption, (2) challenge the jury instructions as impermissibly shifting the burden of proof concerning Petitioner's defense of heat-of-passion, (3) challenge the jury instructions as impermissibly shifting the burden of proof concerning Petitioner's defense of self-defense, (4) argue that his trial counsel was ineffective in his cross-examination of the State's eyewitness, and (5) preserve Petitioner's right to appeal. (Dkt. # 5-4 at 1, 2). By Order filed February 9, 2012, in Case

No. PC-2011-1010 (Dkt. # 5-4), the OCCA applied the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and affirmed the district court's denial of post-conviction relief.

Petitioner commenced this federal action by filing a pro se petition for writ of habeas corpus. (Dkt. # 1). Petitioner raises twelve (12) grounds of error, as follows:

Ground 1: The State was permitted to indirectly exclude [an] African-American juror when it could not accomplish it directly.
An African-American juror was excused for no good reason, and the State was essentially awarded an extra peremptory challenge.

Ground 2: Denial of right to impartial jury.
It was error to refuse to strike the jury panel, or, in the alternative, excuse two prospective jurors for cause.

Ground 3: The admission of numerous irrelevant and prejudicial photographs violated the Oklahoma Evidence Code and denied petitioner the right to a fair trial under the Fourteenth Amendment to the United States Constitution.

Ground 4: It was reversible error to give a flight instruction in this case. The instruction undermined Petitioner's right to a fair trial under the Fourteenth Amendment to the United States Constitution.

Ground 5: The jury was not instructed on the self-defense provisions of 21 O.S. § 1289.25 (2006). The jury was not adequately instructed on Petitioner's theory of defense, requiring reversal of his conviction in Count One.

Ground 6: The prosecutor's response to defense counsel's discovery request with regard to the jail telephone recordings violated Petitioner's right to due process and a fair trial.

Ground 7: The combined errors during Petitioner's trial served to deny him the right to a fair trial guaranteed by the Fourteenth Amendment to the United States Constitution.

Ground 8: Appellate counsel failed to challenge validity of presumption in jury instructions on the basis that it violate [sic] the due process clause, because no rational common-sense connection exist [sic] between the basic fact proved and the presumed elemental fact of the crime of manslaughter.

| Ground 9: | Appellate counsel failed to raise error that State unconstitutionally imposed on Petitioner the burden of reducing the charge to manslaughter by proving that he acted in the heat of passion upon sudden provocation. |
| --- | --- |
| Ground 10: | Appellate counsel failed to raise error that instruction shifting burden of proof to Petitioner on issue of self-defense was unconstitutional because absence of self-defense is essential element of crime of first-degree manslaughter. |
| Ground 11: | Appellate counsel failed to raise error that trial counsel performed ineffectively in cross-examining the State's key witness. |
| Ground 12: | Appellate counsel's ineffectiveness deprived Petitioner of his right to appeal, and Petitioner should be granted another appeal. |

(Dkt. # 1). Respondent argues that the OCCA's adjudications of grounds 1, 2, and 7 on direct appeal and 8-12 on post-conviction appeal were not contrary to, or unreasonable applications of, federal law, and that grounds 3-6 are state law issues not cognizable for federal habeas review. (Dkt. # 5).

## *ANALYSIS*

### A.    Exhaustion/Evidentiary hearing

As an initial matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b). Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner presented his claims to the OCCA on direct and post-conviction appeal. Therefore, he has exhausted his state court remedies.

In addition, Petitioner has not met his burden of proving entitlement to an evidentiary hearing. Williams v. Taylor, 529 U.S. 420 (2000); Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998).

### B.    Claims adjudicated by the OCCA

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state

convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 784-85 (2011).

### 1.  Improper removal of African-American juror for cause (ground 1)

As his first ground of error, Petitioner, an African-American, alleges the trial court abused its discretion in excusing an African-American juror from the jury panel for cause because the juror had an outstanding warrant for his arrest.[1]  (Dkt. # 1 at 4).  Petitioner argues that, as a result of the unfounded removal of the juror for cause, the State gained an extra peremptory challenge.  Id.  The OCCA denied relief on this claim, finding "no abuse of the trial court's discretion in this case as the

---

[1]Petitioner recognizes, see Dkt. # 7 at 5, that the analysis required by Batson v. Kentucky, 476 U.S. 79 (1986), does not apply to this claim since the prospective juror was excused for cause rather than through the exercise of a peremptory challenge.  See United States v. Elliott, 89 F.3d 1360, 1364-65 (8th Cir. 1996) (concluding "Batson applies only to peremptory strikes"), cert. denied, 519 U.S. 1118 (1997); United States v. Blackman, 66 F.3d 1572, 1575 n.3 (11th Cir. 1995) (same); United States v. Bergodere, 40 F.3d 512, 515-16 (1st Cir. 1994) ("defendant must show that the challenge was peremptory rather than for cause" to invoke Batson).

record shows the prospect of being arrested on the outstanding warrant rendered the prospective juror unable to perform his duties in accordance with the trial court's instructions and the juror's oath." (Dkt. # 5-3 at 3 (citations omitted)).

The Sixth Amendment, as applicable to the states through the Fourteenth Amendment, and principles of due process, guarantee a criminal defendant in state court an "impartial jury." Ristaino v. Ross, 424 U.S. 589, 595 n.6 (1976) (citations omitted); Ross v. Oklahoma, 487 U.S. 81, 85 (1988). "[T]he Constitution presupposes that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case." Lockhart v. McCree, 476 U.S. 162, 184 (1986). It is the trial judge's responsibility to "remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence." Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981). In Oklahoma, the decision whether to disqualify a prospective juror for cause rests in the trial court's sound discretion. Powell v. State, 906 P.2d 765, 771 (Okla. Crim. App. 1995); Allen v. State, 862 P.2d 487, 491 (Okla. Crim. App. 1993), cert. denied, 511 U.S. 1075 (1994); Workman v. State, 824 P.2d 378, 380 (Okla. Crim. App. 1991), cert. denied, 506 U.S. 890 (1992). The OCCA will not overturn the trial court's decision unless an abuse of discretion is shown. Allen, 862 P.2d at 491; Simpson v. State, 827 P.2d 171, 175 (Okla. Crim. App. 1992). The state court resolves all doubts regarding jury impartiality in a criminal case in favor of the accused. Simpson, 827 P.2d at 175. However, a juror who cannot impartially decide guilt violates his oath and is the proper subject of a challenge for cause. Id.; Dutton v. State, 674 P.2d 1134, 1138 (Okla. Crim. App. 1984). The OCCA has found that a trial court does not abuse its discretion in excusing a juror for cause after

the juror expresses a fear of being distracted during trial. <u>Smith v. State</u>, 727 P.2d 1366, 1370 (Okla. Crim. App. 1986).

In this case, the record reflects that the trial judge did not abuse his discretion in dismissing prospective juror Fields for cause. During the jury selection process, the prosecutor checked the criminal records for all of the prospective jurors and discovered the existence of an outstanding arrest warrant for Fields in Tulsa County District Court, Case No. TR-2009-6649. (Dkt. # 6-5, Tr. Vol. II at 123). The prosecutor moved to dismiss Fields for cause and defense counsel objected. <u>Id.</u> at 128. The trial judge held the State's motion in abeyance during the lunch recess to afford Fields the opportunity to have the outstanding warrant recalled. <u>Id.</u> at 130. The trial judge stated that "as long as the warrant is outstanding, I think that makes you presumptively not qualified to serve." <u>Id.</u> at 126. After the lunch recess, in chambers, Fields informed the trial judge that he had been unable to get the warrant recalled. Therefore, over defense counsel's objection, Fields was excused for cause. <u>Id.</u> at 246.

The Court agrees with the OCCA that the trial court did not abuse its discretion in excusing Fields for cause. It was reasonable for the trial judge to expect that, if Fields were selected to serve on the jury, he could be biased against the State and distracted by the possibility of being arrested while at the courthouse. The trial judge did not abuse his discretion in deciding that Fields may have been unable to impartially decide guilt, and properly excused Fields for cause.

In his reply, Petitioner emphasizes that "if the prosecutor did not want prospective juror Fields on the jury, he should have at least been forced to use a peremptory challenge. In effect the court granted the State an additional peremptory challenge not permitted by 22 O.S.2001, § 655."[2] (Dkt. # 7 at 5-6 (citation omitted)). However, the Supreme Court has long recognized that "peremptory challenges are not of constitutional dimension." Ross, 487 U.S. at 88 (citations omitted) (finding no violation of right to an impartial jury where trial judge's erroneous refusal to remove prospective juror for cause forced defendant to remove juror with a peremptory challenge thereby depriving defendant of full compliment of peremptory challenges provided under state law); see also Rivera v. Illinois, 556 U.S. 148, 157 (2009) (stating that "[i]f a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a state court's good-faith error is not a matter of federal constitutional concern"). As explained in Ross, peremptory challenges "are a means to achieve the end of an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." Ross, 487 U.S. at 88.

In contrast to the defendants' claims in Ross and Rivera, Petitioner does not claim that he lost a peremptory challenge as a result of the trial judge's allegedly improper ruling. Instead, he complains that the prosecutor gained a peremptory challenge. Nonetheless, under Ross and Rivera, as long as the jury that sits is impartial, the number of peremptory challenges resulting from a trial judge's allegedly erroneous ruling on a motion to dismiss for cause does not rise to the level of a

---

[2]Petitioner impliedly recognizes that had Fields not been excused for cause, the State would have had a sufficient race-neutral explanation for a peremptory challenge. See, e.g., Parker v. Cain, 2008 WL 4534096, *12 (E.D. La. 2008) (unpublished opinion cited for persuasive value) (finding that a prospective juror's criminal background, including the existence of subpoenas in a misdemeanor case, to be a sufficient race-neutral explanation for a peremptory challenge).

constitutional violation.  <u>United States v. Prati</u>, 861 F.2d 82, 87 (5th Cir. 1988) (citing <u>Ross</u> and affirming defendant's conviction where trial judge's unintentionally erroneous removal of juror for cause resulted in extra peremptory challenge for the government).  Petitioner does not assert that his jury was not impartial as a result of the dismissal of Fields for cause.  Thus, Petitioner's complaint that the State gained a peremptory challenge does not rise to the level of a constitutional violation.

Petitioner has not demonstrated that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.  For that reason, he is not entitled to habeas corpus relief on his first ground of error.

### 2.    Denial of right to an impartial jury (ground 2)

In ground 2, Petitioner argues that he was denied his right to an impartial jury when the trial court refused to strike the jury panel or excuse two prospective jurors for cause.  (Dkt. # 1 at 6).  On direct appeal, Petitioner complained that the jury panel was tainted by statements made by two "biased" prospective jurors, Harris and Luiskutty.  (Dkt. # 5-1 at 10, 13).  Petitioner alleged that, because he had to exercise two peremptory challenges to excuse the biased jurors, he in effect received only seven peremptory challenges.  <u>Id.</u> at 14.  The OCCA denied relief on this claim, finding as follows:

> Here, Appellant did not make a record of what jurors he would have excused but for using two peremptory challenges to excuse Dr. L. and Dr. H.  Therefore, Appellant has not properly preserved for our review any objections to the trial court's failure to excuse either prospective juror for cause.
>
> Further, we find Appellant has failed to demonstrate that any comments by the two prospective jurors so affected the panelists who ultimately sat on his jury as to have denied him a fair trial.  All of those who sat on Appellant's jury swore that they could be fair and impartial.  We find no abuse of discretion in the trial court's failure to strike the jury panel.

(Dkt. # 5-3 at 3-4 (citations omitted)).

Any claim that the jury was impartial must focus on the jurors who ultimately sat. <u>Ross</u>, 487 U.S. at 86. The Sixth Amendment includes "the right to a jury capable and willing to decide the case solely on the evidence before it." <u>Rodriguez v. Roberts</u>, 371 F. App'x 971, 973 (10th Cir. 2010) (unpublished)[3] (quoting <u>United States v. Brooks</u>, 569 F.3d 1284, 1288 (10th Cir. 2009)). The Supreme Court has stressed that the trial court is granted wide discretion in conducting voir dire in areas of inquiry that might tend to show juror bias. <u>Mu'Min v. Virginia</u>, 500 U.S. 415, 427 (1991). The Tenth Circuit has specifically held that federal courts may reverse state court determinations of juror impartiality only upon a showing of "manifest error." <u>Brecheen v. Reynolds</u>, 41 F.3d 1343, 1350 (10th Cir. 1994); <u>see also</u> <u>Cannon v. Gibson</u>, 259 F.3d 1253, 1280 (10th Cir. 2001) (deferring to a trial judge's finding as to whether a potential juror is biased unless the finding is rebutted by clear and convincing evidence); <u>accord</u> <u>Sallahdin v. Gibson</u>, 275 F.3d 1211, 1224 (10th Cir. 2002). This limited degree of review is justified by a trial judge's unique advantage in observing and evaluating the demeanor of jurors. <u>Brecheen</u>, 41 F.3d at 1350 (quoting <u>Church v. Sullivan</u>, 942 F.2d 1501, 1519 (10th Cir. 1991)). "The trial judge's finding as to whether a potential juror is biased is a finding of fact which is presumed correct unless rebutted by clear and convincing evidence." <u>Cannon</u>, 259 F.3d at 1280 (citing 28 U.S.C. § 2254(e)(1)).

In this case, the trial court asked the jury panel about prior experiences as jurors. Juror Harris told the court that, 20 years earlier, he served on a jury in Florida during a murder trial and the jury returned a verdict of not guilty based on insufficient evidence. (Dkt. # 6-4, Tr. Vol. I at 80). Five years later, Harris learned that the same person had raped and murdered another girl. <u>Id.</u> at 80-

---

[3]This and other unpublished court decisions herein are cited as persuasive authority, pursuant to Tenth Circuit Rule 32.1.

81.  That experience caused Harris to "wonder if I had the ability to make the right decision."  <u>Id.</u> at 81.  Defense counsel moved to strike the panel, arguing that Harris's statements made it "impossible for Mr. Larkin to receive a fair trial from this jury."  <u>Id.</u> at 82.  The trial judge denied the request.  <u>Id.</u> at 83.  The next day, defense counsel reurged the motion to strike the jury panel. (Dkt. # 6-5, Tr. Vol. II at 121-22).  The trial judge concluded Harris's comments would not deprive Petitioner of a fair trial.  <u>Id.</u> at 123.

During defense counsel's voir dire, prospective juror Luiskutty, a physician, stated that he had patients who were police officers and that his "natural instinct would be to trust the police officer's testimony."  (Dkt. # 6-5, Tr. Vol. II at 294).  Defense counsel moved to excuse Luiskutty for cause.  <u>Id.</u>  After allowing both parties to ask Luiskutty additional questions, the trial judge denied the request.  <u>Id.</u> at 298.  Petitioner exercised peremptory challenges to excuse both Harris and Luiskutty.  (Dkt. # 6-6, Tr. Vol. III at 379-80).

The Supreme Court has held that "a defendant's exercise of peremptory challenges . . . is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been removed for cause."  <u>United States v. Martinez-Salazar</u>, 528 U.S. 304, 317 (2000); <u>see also</u> <u>United States v. Brooks</u>, 161 F.3d 1240, 1245 (10th Cir. 1998) (noting that even if the district court erred in refusing to excuse a biased juror for cause, the error was harmless because the defendant exercised a peremptory challenge to strike the juror, and the defendant presented no evidence that any of the remaining jurors were biased).  Although Petitioner used all of his peremptory challenges, he has not shown that any biased jurors remained.  Therefore, even if the trial court erred in failing to excuse the challenged jurors for cause, Petitioner has not shown that the trial judge's ruling resulted in a violation of his constitutional right to an impartial jury.  Nor has

Petitioner demonstrated that the trial judge's denial of defense counsel's motions to strike the jury panel resulted in a violation of his constitutional right to an impartial jury. Petitioner has not demonstrated that the OCCA's decision rejecting this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. Habeas corpus relief on ground 2 is denied.

### 3.     Improper admission of photographs (ground 3)

In ground 3, Petitioner claims that the trial court's admission of "numerous irrelevant and prejudicial photographs" resulted in the denial of his right to a fair trial. (Dkt. # 1 at 7). On direct appeal, Petitioner complained that the trial court allowed admission of a photograph of the victim when he was alive (Dkt. # 5-1 at 15), and four (4) photographs of the victim's wounds taken during autopsy (id. at 17). The OCCA denied relief on this claim, finding "no plain error in the admission of the single, appropriate pre-mortem photograph of the decedent," and that the "[p]hotographs sponsored by the medical examiner were also properly admitted as probative of the nature, extent and location of wounds, establishing the *corpus delicti*, depicting the crime scene, and corroborating the medical examiner's testimony." (Dkt. # 5-3 at 4 (citations omitted)).

"[F]ederal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991); see also Hooks v. Workman, 606 F.3d 715, 748 (10th Cir. 2010). In conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 67-68. "In a habeas proceeding claiming a denial of due process, 'we will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" Maes v. Thomas, 46 F.3d 979, 987 (10th Cir. 1995) (quoting Tapia v.

Tansy, 926 F.2d 1554, 1557 (10th Cir. 1991)); see also Martin v. Kaiser, 907 F.2d 931, 934 (10th

Cir. 1990) ("errors in the admissibility of evidence are not grounds for habeas corpus relief absent

fundamental unfairness so as to constitute a denial of due process of law"). "[B]ecause a

fundamental-fairness analysis is not subject to clearly definable legal elements," when engaged in

such an endeavor a federal court must "tread gingerly" and exercise "considerable self-restraint."

Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002) (citation omitted).

      After reviewing the record in this case, the Court finds Petitioner has not made the necessary

showing. Prior to commencement of trial, defense counsel filed a motion in limine with regard to

a friend of the victim's family being called as a witness for the sole purpose of identifying a pre-

mortem photograph of the victim. (Dkt. # 6-5, Tr. Vol. II at 98). The trial judge granted the motion

and ordered the State to use Towry to identify the photograph. (Id. at 99). Petitioner did not object

to admission of the photograph, only the witness used to identify the photograph. In addition, the

trial judge reviewed the State's proffered autopsy photographs in chambers. (Dkt. # 6-6, Tr. Vol.

III at 330-344). In light of the parties' arguments and over defense counsel's objections, the trial

judge ruled that two photographs showing the entrance wound and one of several photographs

showing the exit wound were admissible, id. at 333, 335, and allowed two photographs, with one

being redacted to eliminate a piece of a body part visible in the photograph, demonstrating the

trajectory of the bullet, id. at 337. The court also found that a photograph showing the victim's chest

cavity with organs removed was prejudicial and unnecessary, and reserved ruling on photographs

of the interior of the van based on defense counsel's objection that they were cumulative, id. at 343.

      This Court finds that, in light of all the evidence presented at trial, the complained of

photographs were neither repetitive nor unduly prejudicial. Therefore, Petitioner fails to

demonstrate that the admission of the photographs rendered his trial fundamentally unfair. Petitioner also fails to demonstrate that the OCCA's adjudication of this claim was an unreasonable application of federal law as determined by the Supreme Court. Accordingly, habeas corpus relief on ground 3 is denied.

### 4. Improper jury instructions (grounds 4 and 5)

In his fourth ground of error, Petitioner complains that the trial judge improperly issued a jury instruction on flight. (Dkt. # 1 at 10). On direct appeal, Petitioner argued that, while he did not remain at the scene, "he didn't really flee, either." (Dkt. # 5-1 at 21). Petitioner further argued that, because he was on probation at the time of the shooting, he was not supposed to have a gun. Id. at 23. Thus, "his 'consciousness of guilt' for possessing the gun was entirely independent of his shooting the gun." Id. at 23-34. The OCCA denied relief, citing Hancock v. State, 155 P.3d 796, 820 (Okla. Crim. App. 2007), and finding that "Appellant's plea of self-defense and testimony explaining his departure from the scene brings this case within the well-established parameters where the flight instruction has been approved." (Dkt. # 5-3 at 5).

In ground 5, Petitioner complains that the jury was not instructed on the self-defense provisions of Okla. Stat. tit. 21, § 1289.25(D) (2006) (providing that "a person who is not engaged in an unlawful activity" and who is attacked in a place where he or she has a right to be "has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force, if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony"). The OCCA rejected this claim, finding as follows:

> In the present case, it was undisputed that Appellant was a convicted felon who was illegally carrying a gun when he encountered the decedent. The evidence was also

undisputed that the decedent was not armed.  These particular facts preclude any application of subsection D to Appellant's case and we find no abuse of the trial court's discretion in omitting a jury instruction under § 1289.25(D).

(Dkt. # 5-3 at 5-6 (citation omitted)).

As stated above, federal habeas relief is not permitted for state law errors.  Rose v. Hodges, 423 U.S. 19, 22 (1975); Patton v. Mullin, 425 F.3d 788, 807 (10th Cir. 2005) (stating that, in general, matters concerning the giving of jury instructions are considered questions of state law and not proper subjects of federal habeas corpus review under 28 U.S.C. § 2254).  It is well established that "errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'"  Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981)); see also Maes, 46 F.3d at 984 ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial.").  The burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'"  Maes, 46 F.3d at 984 (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

Upon review of the record, the Court finds that Petitioner was not denied a fundamentally fair trial as a result of the jury instruction issued by the trial court.  As to ground 4, the record confirms that the trial judge issued an instruction on flight over defense counsel's objection.  (Dkt. # 6-10, Tr. Vol. VII at 982-83; Dkt. # 6-14, O.R. Vol. III at 367, Instruction No. 20 (citing OUJI-CR 9-8)).  Petitioner was not deprived of a fair trial or due process of law because the challenged

instruction informed the jury that it first had to determine whether Petitioner's departure after the crime was committed constituted "flight." Id. Only if it determined the departure constituted "flight" could it consider his departure along with all the other evidence presented in determining the question of Petitioner's guilt. The instruction did not allow the jury to conclude Petitioner was guilty simply because of his departure. Id. To the contrary, it specifically provided that evidence of departure could be considered only if the jury drew a specific set of inferences from the departure. Id. The Court concludes that use of the challenged flight instruction in this case did not deprive Petitioner of a fair trial or due process of law. Petitioner is not entitled to habeas corpus relief on ground 4.

As to Petitioner's ground 5 claim, the Court finds that, because Petitioner was unlawfully in possession of a firearm at the time of the shooting, he was not entitled to issuance of an instruction based on Okla. Stat. tit. 21, § 1289.25(D). Thus, Petitioner's trial was not rendered fundamentally unfair as a result of the omission of a jury instruction under § 1289.25(D). Petitioner is not entitled to habeas corpus relief on ground 5.

### 5. Discovery violation (ground 6)

In ground 6, Petitioner claims the prosecutor responded improperly to defense counsel's request regarding jail telephone recordings resulting in the denial of his right to a fair trial. (Dkt. # 1 at 10). On direct appeal, Petitioner complained that one week before the original trial date, the prosecutor provided defense counsel with "85 pages of written documents and approximately a hundred hours of telephone call recordings made by Mr. Larkin from the time of his arrest on June 20, 2008." (Dkt. # 5-1 at 33). Then, ten days prior to Petitioner's continued trial date, the prosecutor notified defense counsel that "additional recordings were ready to be picked up." Id.

The trial judge found no discovery violation by the State. (Dkt. # 6-9, Tr. Vol. VI at 839). On direct appeal, Petitioner cited <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 645 (1974), and also asserted a claim of prosecutorial misconduct, alleging that the prosecutor "harbored an improper motive in delaying discovery and refusing to advise defense counsel of which jail phone call tapes the State intended to use at trial." (Dkt. # 5-1 at 31). Petitioner claimed, without providing any factual support, that "the prosecutor was able to force defense counsel to waste time which could have been more productively spent preparing for trial." <u>Id.</u> at 35.

In adjudicating Petitioner's claims on direct appeal, the OCCA ruled that "the trial court did not abuse its discretion in finding no discovery violation on the State's part." (Dkt. # 5-3 at 6 (citation omitted)). The OCCA further found that:

> Appellant has failed to show the State "harbored an improper motive in delaying discovery and refusing to advise defense counsel of which jail phone call tapes the State intended to use at trial" or that "the prosecutor was able to force defense counsel to waste time [listening to the recorded phone conversations] which could have been more productively spent preparing for trial." Appellant knew he made the phone calls at issue and knew they were recorded. Courts have historically held a defendant bears some burden of supplying counsel with necessary information within his knowledge. It was just as onerous on the prosecutor as on defense counsel to listen to all of the tapes and determine their admissibility. Further, defense counsel has not specified anything they were not able to do because they spent their time listening to recorded phone conversations.

<u>Id.</u> at 6-7 (citations to record and authorities omitted).

To the extent Petitioner claims the prosecutor violated state discovery rules, Petitioner is not entitled to habeas corpus relief unless he demonstrates that the discovery violations resulted in a violation of his right to due process. <u>Benson v. Martin</u>, 8 F. App'x 927, 930 (10th Cir. 2001) (unpublished) (finding no entitlement to habeas relief absent a showing of "prejudice sufficient to rise to the level of fundamental unfairness" for prosecution's failure to comply with state discovery

rules); <u>Dalton v. Dinwiddie</u>, 2007 WL 1231794, *12 (W.D. Okla. April 25, 2007) (unpublished). Petitioner has not demonstrated that his trial was rendered fundamentally unfair as a result of the procedures used by the prosecution to present Petitioner's telephone conversations recorded while he was in custody. The trial judge determined portions of the tapes were admissible after both parties and the trial judge listened to the tapes. <u>See</u> Dkt. # 6-8, Tr. Vol. V at 729-50, 797-821; Dkt. # 6-9, Tr. Vol. VI at 822-45.[4] Even if the prosecutor violated state discovery rules in providing the recorded phone calls to defense counsel, the trial judge's review procedures comported with due process and Petitioner is not entitled to habeas relief.

To the extent Petitioner raises a claim of prosecutorial misconduct, he is not entitled to habeas corpus relief. "Prosecutorial misconduct can result in constitutional error if it 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>DeRosa v. Workman</u>, 679 F.3d 1196, 1222 (10th Cir. 2012) (quoting <u>Donnelly</u>, 416 U.S. at 643). In this habeas action, Petitioner makes the same conclusory and unsupported allegation he made on direct appeal. He fails to acknowledge that the prosecutor also had to review the hours of audio recordings. Furthermore, Petitioner points to no specific preparation that defense counsel was unable to undertake or complete as a result of having to spend time listening to the audio recordings. In light of the evidence presented in this case, the Court finds no reasonable probability that the verdict would have been different without the alleged misconduct by the prosecutor and concludes that the proceedings against Petitioner were not rendered fundamentally unfair by prosecutorial misconduct.

---

[4]At one point during the review of the tapes, defense counsel complained, "[t]his whole thing here is so incredibly confusing." (Dkt. # 6-8, Tr. Vol. V at 815). The trial judge responded, "Well, I can't help it. Mr. Larkin chose to make many conversations. Hundreds of hours, apparently. And some of it has evidentiary value and some of it doesn't. And we just have to figure it out." <u>Id.</u>

Petitioner has failed to satisfy the standard set forth in 28 U.S.C. § 2254(d). For that reason, habeas corpus relief on ground 6 shall be denied.

### 6. Cumulative error (ground 7)

In his seventh ground of error, Petitioner claims that the "combined errors" during his trial deprived him of his right to a fair trial. (Dkt. # 1 at 10). The OCCA found that "Appellant's claim of cumulative error is denied as none of the propositions of error raised herein warrant relief." (Dkt. # 5-3 at 7 (citation omitted)).

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted). The Tenth Circuit has held that a cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Additionally, only federal constitutional errors can be aggregated to permit relief on habeas review. Matthews v. Workman, 577 F.3d 1175, 1195 (10th Cir. 2009). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990)). "[T]he task 'merely' consists of 'aggregat[ing] all the errors that have been found to be harmless' and 'analyz[ing] whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'" Grant v. Trammell, 727 F.3d 1006, 1025 (10th Cir. 2013) (quoting Rivera, 900 F.2d at 1470).

In this case, this Court has not found two or more harmless errors during Petitioner's trial. As a result, there is no basis for a cumulative error analysis. Petitioner fails to show that the OCCA's rejection of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). Habeas corpus relief is denied on ground 7.

**7.      Ineffective assistance of appellate counsel (grounds 8-12)**

In grounds 8-12, Petitioner raises the same claims of ineffective assistance of appellate counsel he raised on post-conviction appeal. (Dkt. # 1 at 10). In resolving Petitioner's claim of ineffective assistance of appellate counsel, the OCCA cited Strickland v. Washington, 466 U.S. 668 (1984), and found as follows:

> It is not enough simply to prove appellate counsel did not urge the alleged errors on direct appeal. Petitioner must additionally demonstrate appellate counsel's failure to raise such errors on appeal was not, under the circumstances of his case, a rendering of "reasonably effective assistance." *See Mayes v. State*, 1996 OK CR 28, ¶ 13, 921 P.2d 367, 372 ("mere failure of direct appeal counsel to raise a claim does not, in and of itself, deprive a petitioner of 'reasonably effective assistance' of counsel [under] Strickland"). "The fact the original appellate counsel did not raise every issue now raised by post-conviction counsel . . . is not evidence of ineffectiveness." *Castro v. State*, 1994 OK CR 53, ¶ 7, 880 P.2d 387, 389 (*citing Jones v. Barnes*, 463 U.S. 745, 750-54, 103 S. Ct. 3308, 3312-14, 77 L. Ed. 2d 987, 993-95 (1983)).
>
> Additionally, Petitioner's Application did not demonstrate that the errors he claimed had been omitted from his appeal were of a caliber that, if proven, would present a reasonable probability of a different result on appeal. Because Petitioner's Application did not demonstrate to the District Court that he had failed to receive reasonably effective assistance of counsel on appeal, and because that Application did not demonstrate prejudice occurring from counsel's representation on appeal, the District Court's order denying the Application (an Application resting wholly on claims of ineffective assistance of appellate counsel) should be affirmed.

(Dkt. # 5-4 at 3-4).

Petitioner is not entitled to habeas relief on his claims of ineffective assistance of appellate counsel unless he demonstrates that the OCCA's adjudication was contrary to, or an unreasonable application of, Strickland. When assessing claims of ineffective assistance of appellate counsel, this Court applies the Strickland two-pronged standard used for general claims of ineffective assistance of trial counsel. Smith v. Robbins, 528 U.S. 259, 285 (2000) (citing Strickland, 466 U.S. 668). Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin, 275 F.3d at 1235; Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 792 (2011). If Petitioner is unable to show either "deficient performance" or

"sufficient prejudice," his claim of ineffective assistance fails. Strickland, 466 U.S. at 700. Thus, it is not always necessary to address both Strickland prongs. This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)).

When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999). In Cargle v. Mullin, 317 F.3d 1196 (10th Cir. 2003), the Tenth Circuit directed that:

> If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance.

Id. at 1202 (citation and footnote omitted); see also Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998). In addition,

> [T]o satisfy Strickland's deficient performance element, a habeas petitioner 'must . . . show that his appellate counsel was objectively unreasonable in failing to find arguable issues to appeal – that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them.' To satisfy Strickland's prejudice element, a petitioner must establish 'a reasonable probability that, but for his counsel's unreasonable failure to raise an issue, he would have prevailed on his appeal.'

Kidwell v. Martin, 480 F. App'x 929, 933 (10th Cir. 2012) (unpublished) (quoting Robbins, 528 U.S. at 285).

Petitioner bears the burden of demonstrating that the OCCA unreasonably applied <u>Strickland</u>. As discussed below, Petitioner fails to carry his burden and, for that reason, he is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d). As a preliminary matter, the Court notes that Petitioner's claims of ineffective assistance of appellate counsel, as identified in the petition (Dkt.# 1), lack any factual support and are conclusory and speculative. In his reply (Dkt. # 7), Petitioner offers limited factual support for some of his claims.

### a. Presumption in flight jury instruction (ground 8)

In his reply, Petitioner alleges that appellate counsel provided ineffective assistance in failing to argue that, while his departure from the scene reflected a consciousness of guilt as to the crime of Possession of a Firearm, After Former Conviction of a Felony, the same could not be true as to the crime of First Degree Murder and its lesser included offenses. (Dkt. # 7 at 42-43). For that reason, Petitioner claims that the flight instruction should not have been given. However, as discussed in Part B.4 above, appellate counsel did in fact argue extensively that the flight instruction should not have been given in this case and specifically argued the claim raised in this subclaim of ineffective assistance of appellate counsel. (Dkt. # 5-1 at 23-24). Because appellate counsel raised the very claim Petitioner now alleges he omitted, Petitioner has not demonstrated that the OCCA's adjudication of this claim on post-conviction appeal was contrary to, or an unreasonable application of federal law as determined by the Supreme Court. Petitioner is not entitled to habeas corpus relief on his claim of ineffective assistance of appellate counsel for failing to challenge the propriety of the flight instruction.

### b. Shifting burden of proof by instructing on manslaughter (ground 9)

Petitioner argues in ground 9 that appellate counsel provided ineffective assistance in failing to argue that the trial court improperly shifted the burden of proof by instructing on manslaughter. (Dkt. # 7 at 43-44). Specifically, Petitioner claims that "the instructions were deficient . . . because they imposed on the defendant the burden of negating criminal intent by proving that he acted under the heat of passion." Id. In support of this claim, Petitioner cites Mullaney v. Wilbur, 421 U.S. 684, 703 (1975). Id. at 43.

In Bland v. Sirmons, 459 F.3d 999, 1010-1014 (10th Cir. 2006), the Tenth Circuit considered and rejected a petitioner's challenge to his jury instructions as impermissibly shifting the burden of proof, finding as follows:

> Mullaney involved a challenge to a Maine murder statute that allowed any intentional or criminally reckless killing to be punished as murder "unless the defendant proves by a fair preponderance of the evidence that it was committed in the heat of passion on sudden provocation, in which case it is punished as manslaughter." Mullaney, 421 U.S. at 691-92, 95 S. Ct. 1881. The Court declared the statute unconstitutional because "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." Id. at 704, 95 S. Ct. 1881. Two years after issuing the decision in Mullaney, however, the Supreme Court clarified that its holding should be narrowly construed. In Patterson v. New York, 432 U.S. 197, 214, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977), the defendant argued that Mullaney prohibited a state from permitting guilt or punishment "to depend on the presence or absence of an identified fact without assuming the burden of proving the presence or absence of that fact, as the case may be, beyond a reasonable doubt." The Court rejected that interpretation. Although it acknowledged that Mullaney requires a state to prove "every ingredient of an offense beyond a reasonable doubt" and prohibits a state from "shift[ing] the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense," the Court declared it "unnecessary" to have gone further in Mullaney. Id. at 215, 97 S. Ct. 2319. Patterson thereby limited Mullaney to situations where a fact is presumed or implied against a defendant. See id. at 216, 97 S. Ct. 2319; United States v. Molina-Uribe, 853 F.2d 1193, 1203-04 (5th Cir. 1988), *overruled in part on other grounds by* United States v. Bachynsky, 934 F.2d 1349 (5th Cir. 1991) (en banc). Because the written instructions did not permit the jury to presume malice aforethought, required the State to prove malice aforethought beyond a reasonable doubt, and defined malice and heat of passion as mutually exclusive, the instructions

provided to the jury in Mr. Bland's case did not violate <u>Patterson</u>.  <u>See Davis v.</u>
<u>Maynard</u>, 869 F.2d 1401, 1406-07 (10th Cir. 1989) (rejecting a <u>Mullaney</u> challenge
to substantially similar jury instructions), *vacated sub nom.*, <u>Saffle v. Parks</u>, 494 U.S.
484, 110 S. Ct. 1257, 108 L. Ed. 2d 415 (1990), *opinion reinstated in part*, 911 F.2d
415 (10th Cir. 1990) (per curiam).

<u>Bland</u>, 459 F.3d at 1013.

Like the instructions given in <u>Bland</u> and <u>Davis</u>, the instructions in this case did not permit

the jury to presume either malice aforethought or heat of passion, required the State to prove the

elements of malice aforethought or heat of passion beyond a reasonable doubt, and defined malice

and heat of passion as mutually exclusive.  (Dkt. # 6-14, O.R. Vol. III at 371, 374-76, 377

(Instruction Nos. 24, 27 and 28)).  Thus, the instructions provided to the jury in Petitioner's case did

not violate <u>Patterson</u> and the claim underlying Petitioner's claim of ineffective assistance of

appellate counsel lacks merit.  Because the omitted claim lacks merit, appellate counsel did not

provide ineffective assistance in failing to raise it.  Petitioner has not demonstrated that the OCCA's

adjudication of this claim on post-conviction appeal was contrary to, or an unreasonable application

of, federal law as determined by the Supreme Court.  Petitioner is not entitled to habeas corpus relief

on ground 9.

### c.    Shifting of burden of proof for self-defense (ground 10)

In ground 10, Petitioner contends appellate counsel provided ineffective assistance in failing

to argue that the jury instructions improperly shifted the burden of proof, requiring him to prove he

acted in self-defense.  (Dkt. # 7 at 44-45).  Contrary to Petitioner's allegation, the record

demonstrates the jury was specifically instructed that "[i]t is the burden of the State to prove beyond

a reasonable doubt that the defendant was not acting in self-defense.  If you find that the State has

failed to sustain that burden, then the defendant must be found not guilty."  (Dkt. # 6-14, O.R. Vol.

III at 392 (Instruction No. 43)). The omitted claim clearly lacks merit. Therefore, appellate counsel

did not provide ineffective assistance in failing to raise it. Petitioner has not demonstrated that the

OCCA's adjudication of this claim on post-conviction appeal was contrary to, or an unreasonable

application of, federal law as determined by the Supreme Court. Petitioner is not entitled to habeas

corpus relief on ground 10.

### d. Trial counsel's ineffective cross-examination of key witness (ground 11)

Next, Petitioner claims appellate counsel provided ineffective assistance in failing to argue

that trial counsel performed deficiently in inadequately cross-examining a key witness for the State,

Valerie Towry, regarding whether or not the victim was armed at the time of the shooting. (Dkt. #

7 at 47-48). Specifically, Petitioner complains that:

> Counsel never asked Ms. Larkin whether she had frisked Hurt, or whether Hurt could
> have had a weapon in his shirt, or pants, or could have concealed a weapon from her?
> Or could have had a weapon under the seat of the van he could have easily reached.
> How could Ms. Larkin have known whether Hurt did not have a weapon on him
> when he got out of the van, when she couldn't remember whether Hurt's hands were
> raised above his waist?

(Id. at 47 n.3).

Towry testified, both on direct and redirect examination, that Hurt did not have a weapon

when he got out of the van prior to being shot. (Dkt. # 6-7, Tr. Vol. IV at 628, 706). On cross and

recross examination, defense counsel asked no additional questions with regard to whether Hurt was

armed at the time of the shooting. Towry also testified that Hurt was standing in the street behind

the van she was driving when Hurt was shot. (Id. at 692). In contrast, Petitioner testified that Hurt

was armed with a semiautomatic handgun and fired at Petitioner first. (Dkt. # 6-9, Tr. Vol. VI at

909-10, 940, 943). Petitioner further testified that Hurt was standing in the grass at the time shots

were fired. (Id. at 939). However, no physical evidence at the scene supported Petitioner's

testimony.  The police found no shell casing or weapon at the scene (Dkt. # 6-7, Tr. Vol. IV at 591), observed no physical evidence at the scene suggesting that Hurt had a gun (Dkt. # 6-6, Tr. Vol. III at 478), observed no weapons in the van (id. at 421, 424), and found blood only in the street where Towry claimed Hurt was shot (id. at 490, 501, 503; Dkt. # 6-7, Tr. Vol. IV at 540, 544, 590).  Police saw no blood evidence on the sidewalk or on the grass (Dkt. # 607, Tr. Vol. IV at 543), where Petitioner claimed Hurt was shot.  In other words, the physical evidence corroborated Towry's testimony that Hurt was unarmed and shot while standing in the street.  None of the physical evidence supported Petitioner's claim that Hurt was armed and shot while standing in the grass.

Based on the evidence cited above, Petitioner has not demonstrated a reasonable probability that the result of his trial would have been different had trial counsel engaged in additional cross-examination of Towry.  Strickland, 466 U.S. at 694.  Therefore, Petitioner has failed to satisfy the prejudice prong of Strickland and his underlying claim of ineffective assistance of trial counsel lacks merit.  Because the omitted claim lacks merit, appellate counsel did not provide ineffective assistance in failing to raise it.  Petitioner has not demonstrated that the OCCA's adjudication of this claim on post-conviction appeal was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.  Petitioner is not entitled to habeas corpus relief on ground 11.

### e.      Deprivation of right to appeal (ground 12)

As his final proposition of error, Petitioner alleges that ineffective assistance of appellate counsel in effect deprived him of his right to a direct appeal.  (Dkt. # 7 at 48-50).   In this case, the appellate process afforded to Petitioner satisfied due process and equal protection standards.  See Griffin v. Illinois, 351 U.S. 12, 18 (1956).  He was not deprived of a direct appeal based on ineffective assistance of appellate counsel.  Habeas corpus relief on ground 12 is denied.

In summary, after reviewing Petitioner's claims of ineffective assistance of appellate counsel, the Court finds that the omitted claims lack merit. As a result, Petitioner cannot satisfy the prejudice prong of Strickland. See Kidwell, 480 F. App'x at 933. Petitioner cannot show a reasonable probability that he would have prevailed on appeal; therefore, his claims of ineffective assistance of appellate counsel fail. Petitioner has not demonstrated that the OCCA's adjudication of these claims on post-conviction appeal was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. Habeas relief on grounds 8-12 is denied.

## C. Certificate of appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of reason. Dockins v. Hines, 374 F.3d 935 (10th Cir. 2004). The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

*CONCLUSION*

After careful review of the record, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.  Therefore, the petition for writ of habeas corpus shall be denied.


**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.      The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

2.      A certificate of appealability is **denied**.

3.      A separate judgment shall be entered in this matter.


**DATED** this 3rd day of February, 2015.



GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT